UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MORENO,<br><br>                Plaintiff,<br><br>    vs.<br><br>VENTURA COUNTY, et al.,<br><br>                Defendants. | CASE NO. CV 14-4586 SJO (RZ)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

The *pro se* and *in forma pauperis* plaintiff, Daniel Moreno, is housed in the Ventura County jail. (It is unclear whether he is serving a criminal sentence, is a pretrial detainee, or both.) In part because he has not followed the instructions on the CV-66 form Civil Rights Complaint that commenced this action, many aspects of that complaint are difficult to understand. Due to the following pleading flaws, the Court will dismiss the complaint with leave to amend.

## I.

## SUMMARY OF ALLEGATIONS

Plaintiff begins his stream-of-consciousness account in the wrong part of the form complaint, namely in the section seeking the substance of "any other lawsuits" he has brought. (He does check a box indicating that he has not brought any other federal lawsuits

while a prisoner.) On May 6, 2014, he states, he "was having medication issues," apparently in reference to one or more mental health conditions. Defendant Gallagher, a jail deputy, came into Plaintiff's cell. Plaintiff first states that Gallagher arrived "without saying why," but immediately thereafter, Plaintiff alleges that Gallagher said "he [Gallagher] has a blue kite [written communication or authorization] if I still want to see the psych doctor." Plaintiff continues as follows:

> He had this blue kite in his left hand well inside the cell he [*sic*] brings it down fast. So the first thing that came to mind was to defend myself so I picked him up and thr[ew] him on the floor. I did not swing at him. And he was doing all the punch[ing].

Comp. at 1. In the ensuing melee, Plaintiff alleges, his toe was stepped upon and injured, his nose broken and his handcuffs applied so tightly that they caused numbness in his left pinky.

Plaintiff was transported to a hospital. He believed that hospital personnel would treat his toe, pinky finger and nose, but "[a]ll they did was check my blood." Comp. at 1. Four pages later, in the section of the form complaint calling for Plaintiff to identify his first *legal* claim, Plaintiff appears to continue his *factual* allegations, nebulously directed at "the hospital." "They didn't check my injuries . . . . They didn't tend to my mental issue as the[y're] suppose[d] to." Comp. at 5. Plaintiff does not specify his "mental issue" or what medication(s) he believes are needed for its treatment.

Plaintiff sues five defendants. In the section of the form complaint seeking "how [each defendant] was acting under color of law," Plaintiff instead supplies a mix of factual and legal statements that are unrelated to the "color of law" issue, as the following roster of the defendants and "color of law" reasons shows:

1. Deputy **Gallagher**, in his individual capacity. "They should do a background check of each inmate with mental issues."

- 2 -

2. **Ventura County Sheriff's Office**. "While I suffered these injuries since I was at the hospital, they should have checked them over."

3. A male deputy, **Heershey** [*sic*], whom Plaintiff does not appear to mention anywhere (else) in the complaint, in his individual capacity. Plaintiff explains:

> He found out that me and Gallagher got into it. He told me if I were from a gang called me [*sic*] a River Rat. So I started to laugh. And then he tell me why won't I start something with him and his partner. Then I said I don't know what you['re] talking about. He say yeah you do. And to let you know I'll fuck you up Deputy Heershey had stated to me.

Comp. at 3.

4. **Dianne**, a jail "psych doctor" whose surname Plaintiff does not supply, in her individual capacity. "Not checking in with an inmate with mental issues."

5. **Jen Loral**, a jail "sick call doctor," in her individual capacity. "When asked for hemorrhoid cream she want to see & touch the area & same goes for my jock itch. It's all on file."

## II.

## SCREENING OF *IN FORMA PAUPERIS* COMPLAINTS

The Court must screen all complaints, including Plaintiff's, brought *in forma pauperis*. *See Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (*per curiam*); 28 U.S.C. § 1915(e)(2) (screening of *in forma pauperis* actions generally). The law requires this Court to "dismiss the case if at any time it determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

# III.

# CLAIMS MUST BE CLEARLY AND SEPARATELY STATED – AND MUST CITE A FEDERAL LEGAL BASIS

Plaintiff neither makes clear what legal claim(s) he is asserting nor indicates what federal law supplies the basis for his claim(s). Although he is aggrieved, for example, that he did not receive different and additional care at the hospital, he asserts nothing that the Court recognizes as a legal claim, let alone a federal one, such as "deliberate Indifference to medical needs in violation of the Eighth or Fourth Amendment." Plaintiff must state his claims separately, each identifying a discrete alleged violation of the Constitution or other law. FED. R. CIV. P. 10(b) ("Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth."). As the Ninth Circuit has explained, separating the complaint into discrete, readily-identifiable claims serves the purpose of clarity:

> Experience teaches that, unless cases are pleaded clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer and society loses confidence in the court's ability to administer justice.

*Bautista v. Los Angeles County*, 216 F.3d 837, 840-41 (9th Cir. 2000).

Should Plaintiff choose to amend his complaint, then he must assert separately-captioned claims (Claim 1, Claim 2, etc.), instead of either (1) combining a narrative about all of the alleged wrongs under a single "Claim 1" heading, and/or (2) sprinkling claim-like language throughout unrelated portions of the complaint form, such as the section devoted to identifying the defendants and how they were acting under color of law. In each claim, Plaintiff shall specify –

(1)     the specific federal law or tort provision allegedly violated, *e.g.*, the right not to be subjected to Cruel and Unusual Punishment under the Eighth Amendment;

(2)     the specific events and other facts that give rise to, and that make out a prima facie case of, *that specific claim*; and

(3)     which of the numerous defendants Plaintiff targets in that specific claim. Plaintiff may not simply refer to "Defendants" within each claim, unless he truly blames every single one of them *in that specific claim*.

It will assist Plaintiff greatly, as well as the Court and the defendants, if he carefully follows the instructions printed on the form CV-66 Civil Rights Complaint.

## IV.
## CURRENT ALLEGATIONS DO NOT SUPPORT VALID CIVIL-RIGHTS CLAIMS AGAINST MEDICAL DEFENDANTS

As noted immediately above, Plaintiff may wish to assert a claim based on a denial of medical attention after his altercation with Gallagher. He also may wish to assert a claim based on the alleged shortcomings or misconduct of two jail medical personnel, namely "Dianne" and Jen Loral. But Plaintiff's current allegations fall short of supporting a valid claim against any medical defendant.

### A.     Deliberate Medical Indifference

First, Plaintiff currently fails to state a valid federal civil rights claim for what is called "deliberate indifference" to serious medical needs. It is insufficient for him to allege, as he thus far has done, only that "the hospital," "Dianne" or Jen Loral failed to act as competent medical professions should. Those allegations support a claim of mere negligence. To state a federal (as opposed to state tort) claim, Plaintiff must competently allege that one or more persons (1) were subjectively aware of his serious medical needs and (2) responded in a deliberately indifferent manner. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006); *Toguchi v. Chung*, 391 F.3d 1051, 1057-58 (9th Cir. 2004) (mere

negligence in diagnosing or treating a prisoner's medical condition does not constitute deliberate indifference); *see also Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (same standard applies to pretrial detainees). Of course, Plaintiff may not simply recite such deliberate-indifference allegations in any amended complaint. He must have, and must supply, a sound factual basis for them.

Second, Plaintiff blames "the hospital" for shortcomings in his medical care there, but he does not sue any individual hospital employees. (He also does not sue "the hospital" itself, but, as discussed in section IV below, he cannot validly do so without competent "*Monell* allegations" that the hospital is a government entity; that (and how) its policies or entrenched practices violate the Constitution; and that his injuries resulted from those policies.) If Plaintiff wishes to sue such individuals but does not know their names, then he may sue them as John or Jane Does, although he must describe such Does adequately to permit their identification, e.g., "Jane Doe #1, a white female, was the nurse on duty in my section of hospital at 11:00 p.m. on May 6, 2014." He also must allege, as noted immediately above, (1) how such individuals subjectively knew that Plaintiff had serious medical needs and (2) how their actions or omissions, after they realized Plaintiff's needs, demonstrated their deliberate indifference.

### B. Sexual Harassment

Plaintiff appears to imply that Jen Loral acted improperly in insisting upon a physical examination, including her touching of Plaintiff's private parts, as a condition of Plaintiff's receiving requested medications for jock itch and hemorrhoids. But he currently states no valid claim of sexual harassment, for at least three reasons. First, he does not allege that he actually had the noted ailments. He alleges only that he asked for creams used to treat them. Comp. at 4. Second, he alleges that Loral "*want[ed] to* see and touch" Plaintiff's affected areas after he asked for topical creams. *Id.* (emphasis added). He does not allege that Loral did, in fact, see or touched him there. Third and perhaps most fundamentally, he alleges no facts from which one reasonably could conclude that Loral

had no bona fide medical need to inspect Plaintiff manually, and thus that her insisted-upon touching was gratuitous and harassing. *See generally Onelas v. Giurbino*, 358 F.Supp.2d 955, 963 (S.D. Cal. 2005) (reviewing authorities outlining scope of claim of sexual harassment by prison personnel). Perhaps by stating "[i]t's all on file," Plaintiff implies that Loral already constructively possessed all the medical information that she legitimately needed to approve the requested creams, without need for any new examination. Oblique implications will not suffice. Plaintiff must allege such matters directly and expressly, perhaps specifying further what information is "on file."

## V.

## ABSENCE OF *MONELL* ALLEGATIONS

One defendant is the Ventura County Sheriff's Department. Such a governmental entity can be liable under § 1983 only where its official policies or unofficial but entrenched practices are the moving force behind a constitutional violation that injured the plaintiff. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, a county may not be held liable for the acts of its officers unless (1) the allegedly unconstitutional acts implement or execute an official government policy, or (2) the constitutional deprivation resulted from a widespread governmental custom. *Redman v. County of San Diego*, 942 F.2d 1435, 1443-44 (9th Cir. 1991). The unconstitutional acts of a government official, standing alone, cannot lead to that government's liability. *Monell v. Dep't of Social Services*, 436 U.S. 658, 692-95 (1978).

Here, the complaint contains no "*Monell* allegations" that Plaintiff's injuries resulted from an official policy or established government custom of the County of Ventura or its Sheriff's Department. Nor does Plaintiff allege just what the policy or practice is. He must correct this shortcoming if he targets any public entity (including any public employee sued in an official capacity) in his amended complaint.

///
///

# VI.

# HEERSHEY'S TAUNTS ARE NOT A CIVIL RIGHTS VIOLATION

A guard's verbal abuse of or threat to a detainee – even if the threatened *conduct* clearly would violate the Constitution – is not sufficient to state a constitutional deprivation, absent injury. *See McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (threat to spray inmate with mace), *following Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (threat to hang prisoner who requested mailing of legal correspondence); *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (verbal abuse based on religious and ethnic background); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("excessively vulgar language"), *following Collins, supra*. Deputy Heershey allegedly challenged Plaintiff to commence a fight with Heershey and Heershey's partner. Such statements, although distressingly unprofessional, fall far short of the hanging threat in *Collins*, *supra* – and even that threat was held to be non-actionable. Plaintiff must omit Heershey from any amended complaint unless he can competently allege that Heershey personally participated in violating Plaintiff's federal civil rights.

# VII.

# CONCLUSION

Based on the foregoing, the complaint hereby is DISMISSED, and leave to amend is granted. More specifically, Plaintiff has three options:

(1) **Plaintiff may pursue this action further** by filing an original and one copy of a pleading captioned as his First Amended Complaint (1AC), bearing the current case number, within 30 days of the filing date of this Order. To withstand another dismissal, the 1AC must correct the deficiencies identified in this Order and must comply with the Federal Rules of Civil Procedure and this Court's Local Rules. The 1AC must be complete in itself and must not refer to any prior version of the complaint.

(2) **Plaintiff may file a "Notice of Intent Not to Amend Complaint"** within 30 days of the filing date of this Order. If Plaintiff timely files such a Notice, then the undersigned will recommend to the assigned District Judge that this action be dismissed, freeing Plaintiff to appeal the dismissal on the grounds cited above. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063-66 (9th Cir. 2004).

(3) **Plaintiff may do nothing** in response to this Order. If Plaintiff does not file a document pursuant to either option 1 or 2 above within the 30-day deadline, then the Court shall deem him to have consented to dismissal of this action for failure to prosecute and for failure to comply with this Order. *See id.*

**The Court cautions Plaintiff that if he fails to file a timely amended complaint or otherwise fails to comply substantially with the terms of this Order, then this action may be dismissed.**

IT IS SO ORDERED.

DATED: July 7, 2014

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE